**M. C. WINTERS, INC. et al., Appellants,**

**v.**

**Jack W. LAWLESS et ux., Appellees.**

**No. 4318.**

Court of Civil Appeals of Texas.

Eastland.

Sept. 26, 1969.

Rehearing Denied Oct. 17, 1969.

Carnes, Blackwell & Coleman, Garland, Moursund & Ferguson, Johnson City, for appellants.

Walding, Almaquer & Nix, Dallas, for appellees.

COLLINGS, Justice.

Jack Lawless and wife, Laura E. Lawless, brought suit against M. C. Winters, Inc. and Robert E. (Bob) Helm, an alleged servant of Winters. Plaintiffs sought to recover actual and exemplary damages from the defendants because of the construction of a "haul road" across plaintiffs' land by Helm in the course of his employment with Winters. Plaintiffs alleged that Helm, as agent and employee of Winters acting within the scope of his employment unlawfully and without any authority from plaintiffs deliberately constructed the road in question and that such action constituted a willful trespass upon plaintiffs' property. The case was tried before a jury and based upon the verdict, judgment was rendered against both defendants, jointly and severally for $9,750.00 actual damages, and against Helm for $10,-000.00 exemplary damages. The defendants have appealed.

In answer to special issues, the jury found (1) that M. C. Winters, Inc., hereinafter referred to as Winters, acting by and through its agents and employees committed a trespass upon plaintiffs' premises, (2) that Winters, acting through its agents and employees failed to use ordinary

care to ascertain the true boundary lines of appellees' property before beginning to bulldoze trees in connection with the construction work involved, (3) that such failure to use ordinary care was a proximate cause of damages to appellees' property, (4) that the reasonable market value of appellees' seven plus acres of land before the destruction of trees thereon was $61,500.00 and the value of such land immediately after the destruction of such trees was $51,750.00, (5) that the amount of money which would reasonably compensate appellees for the value of the use of their property by Winters as a means of ingress and egress to the working area of their construction work was $530.00, (6) that Helm was not acting as a vice-principal of Winters at the time he authorized and instructed other employees of Winters to cut the haul road through appellees' property. Issues Numbers 7 and 8 were submitted conditioned upon an affirmative answer to special issue number 6 and were consequently not answered by the jury. The jury further found (9) that at the time Helm gave instructions to employees of Winters to cut the haul road in question he knew that the road was being cut on appellees' property, (10) that Helm in so instructing the cutting of the road through appellees' property acted willfully, (11) that the amount of money that Helm should pay appellees as exemplary damages was $10,000.00, (12) that the damage done to appellees' property as a result of cutting the haul road was temporary, (13) that the amount of money which would reasonably compensate appellees for the reasonable and necessary expenses which would be incurred in replacing the trees destroyed was $8,000.00, and (14) that the sum of money which would reasonably compensate appellees for reasonable and necessary expenses which would be incurred in replacing the dirt and sod displaced in cutting the haul road was $350.00.

Appellants filed a motion for judgment non obstante veredicto which was over-ruled. Appellees filed their motion for judgment against appellants, jointly and severally in the sum of $18,880.00 based upon the answer of the jury to special issues Numbers 1, 2, 3, 5, 9, 10, 11, 12, 13 and 14, and requested the court to set aside and disregard the findings of the jury to special issues Numbers 4, 6, 7 and 8, urging that under the evidence Helm was acting as vice-principal of Winters, as a matter of law, and that Winters was legally responsible to appellees under the evidence and the jury findings for exemplary damages. In the alternative appellees sought judgment against appellants jointly and severally in the sum of $19,750.00 based upon the answers of the jury to issues numbers 1, 2, 3, 4, 9, 10 and 11, and asked the jury to set aside and disregard the answer to issues 5, 6, 7, 8, 12, 13 and 14. The judgment entered against the appellants was for $9,750.00 actual damages, and against Helm for exemplary damages in the sum of $10,000.00. The judgment was thus apparently based upon and in partial compliance with appellees' alternate plea in their motion for judgment on the verdict.

The record shows that Winters at times pertinent hereto was engaged in highway construction work, and as a joint-venturer with Austin Bridge Company, had a contract with the Texas State Highway Department for construction work on Interstate Highway No. 635, known as the Lyndon B. Johnson Freeway in Dallas County. Austin Bridge Company had the structures, and Winters had the dirt work, including the grading, excavation, seeding of grass, and everything except the concrete work. Helm was an employee of Winters, designated as Superintendent on the work.

In the construction of the freeway it was necessary to do excavation which required the disposing of dirt off of the right-of-way, which is referred to as "wasting of dirt". The specific area where the excess dirt was to be disposed of was an old quarry. In disposing of

a portion of such dirt employees of Winters were using a route through the south of certain property belonging to one Dixon, which was south of appellees' property, and were going completely around appellees' land. Appellee Mrs. Laura E. Lawless, and her mother, Mrs. Katie Wilson, had bought about fifteen acres of land some twenty-three years prior to the trial of this cause, and had several years ago divided the land, about 7½ acres to each. Mrs. Lawless had previously been married to a Mr. George Franklin and they had two children. Mr. and Mrs. Franklin were divorced in 1961, and Mrs. Franklin bought the part of this land set apart to Mr. Franklin after the divorce. A small part of appellees' land was taken for right of way for the Freeway and the Highway Department right of way map showed the land as owned by Franklin at the time work began on the contract. Helm testified that he thought the land involved was Franklin land.

At about the time a need began to exist for the opening of the haul road someone called the Highway Department office to talk about a fence on the property in question and also contacted Winters' office about the matter. Helm was notified and went to a house located on the property where he met a woman who requested him to put a fence on the south of the property at the right-of-way line so that she could pasture horses therein. Helm explained that the fence could not be built because work was in progress on the project and would continue for some time. He then asked if she knew how he could get permission to cross the property with a haul road. After they had looked over the property she gave him a phone number to call and he called the number given him. He testified that he identified himself and his company and stated the desire to cross the property with a haul road. He further testified that he had no way of identifying the parties to whom he talked, but thought at the time that they were Franklin people. Thereafter Helm instructed a bulldozer operator for Winters to open the haul road and showed him where to put it. The road was opened as he had instructed.

Appellees are school teachers and at the end of the school term in the first part of June 1965, they went to Las Vegas, New Mexico, to attend summer school. They returned from New Mexico in the latter part of August and found the haul road had been cut through the southern part of their property. They testified that they had not given permission to appellants or to any one else to open the road.

In several points appellants contend that the court erred in overruling their objections and exceptions to the court's charge. An examination of the record shows that such objections and exceptions were not presented to and passed upon by the court in conformity with the requirements of Rule 272, Texas Rules of Civil Procedure. The points therefore do not present error for consideration on appeal and will not be discussed. See Ellis Drilling Corporation v. McGuire, 321 S.W.2d 911 (Tex.Civ. App., 1959, ref. n. r. e.).

Appellants urge points contending that there is an irreconcilable conflict in the findings of the jury (4) in answers to special issues 2 and 3 on one hand and the answers to issues 9 and 10 on the other hand, (5) a conflict in the answer to issue number 4 on one hand and the answer to issue 12 on the other hand, and (6) a conflict in issue number 4 on the one hand and the answers to issues numbers 5, 12, 13 and 14 on the other hand; that such conflicting findings are mutually destructive and that none of them can form a basis for the judgment, and that the court therefore erred in rendering judgment for appellees.

The case was submitted to the jury upon alternative theories of recovery. One theory was based upon trespass and the other upon negligence proximately causing appellees' damages. Issues were also submitted to the jury concerning temporary and permanent damages. The issues con-

cerning both trespass and negligence were answered favorable to appellees, and the issues concerning temporary damages and permanent damages were likewise answered in appellees' favor. Appellees filed a motion for judgment seeking to recover on issue number 1 finding that Winters, acting through its agents and employees was guilty of trespass and on issues numbers 2 and 3 finding defendants guilty of negligence proximately causing appellees' damages, and seeking to recover alternatively either permanent or temporary damages based upon the findings in support thereof, and requesting the court to disregard findings which supported the other theory. The court rendered judgment for appellees on the permanent damage issues.

■ For a verdict to be set aside on a conflict of findings the rule is that it must appear that one set of issues material to the establishment of a cause of action or defense disregarding the claimed conflicting issues but taking into consideration all the rest of the verdict would support judgment for one party, while the other set of material issues likewise so considered would require a judgment for the other party or would present a situation where neither party could recover. Bradford v. Arhelger, 161 Tex. 427, 340 S.W.2d 772 (1960); 57 Tex.Jur.2d 278. In the instant case the liability issues concerning both trespass and negligence were answered favorable to appellees' right to recover and the alleged conflicting answer to issues number 9 and 10, if supported by evidence would also have supported a judgment for appellees against Helm. Actually the evidence was undisputed that appellants were guilty of, and liable for, a trespass. The findings in answer to issues 2 and 3 were therefore immaterial and no fatal conflict is shown. Appellants' point contending to the contrary is overruled.

■ Appellees herein sought to recover damages because of appellants' construction of a haul road across their land. The bulk of the damage in controversy involved the destruction of trees on appellees' property. It is held that the proper measure of damages for the destruction of trees, where the trees have value only with reference to land, such as for shade and ornamentation, is the diminution in value of the land, that is, the difference in the value of the land before and after the trees are destroyed. Cummer-Graham Co. v. Maddox, 155 Tex. 284, 285 S.W.2d 938 (1956); Hamilton v. Fant, 422 S.W.2d 495 (Tex. Civ.App., 1967); 17 Tex.Jur.2d pages 149, 150; 25 C.J.S. Damages § 85, page 941.

■ Under the undisputed evidence the trees which were destroyed had value only with reference to the land. The court's submission of special issue number 4, which inquired concerning the difference in the market value of the land before and after the destruction of the trees, was therefore a proper submission of the damage issue. Issues 5, 12, 13 and 14 bearing upon the alternative theory of temporary damage are immaterial because as a matter of law under the undisputed evidence appellees were entitled to recover on the basis of such difference in the value of the land. Any inconsistency or conflicts in such issues are, therefore, not fatal conflicts requiring a reversal of the judgment.

■ The record shows that Helm admitted a trespass upon appellees' land and we agree with appellees' contention that this amounts to an admission of liability for the resulting actual damages to the land. We overrule appellant Helm's point urging that the court erred in entering judgment against him for actual damages when there was no finding of liability or causation against him in the issues relied upon by appellees for the judgment.

■ Appellees, as plaintiffs, also sought to recover exemplary damages from Helm because he acted "willfully" in cutting the haul road. Appellees had the burden of

showing that Helm acted intentionally, willfully or maliciously as distinguished from good faith action with the belief that he had permission from the owners to open the road. 56 Tex.Jur.2d pgs. 39–41. The jury found in answer to special issues 9, 10, and 11 that Bob Helm knew at the time he gave instructions to Winters' other employees to cut the haul road that it was being cut through appellees' property; that in directing such other employees to open the road he acted willfully, and that he should be required to pay exemplary damages in the amount of $10,000.00. In appellants' 13th point it is contended that the court erred in entering judgment against Helm for exemplary damages because there was no evidence in support of the findings upon which the judgment is based. This point, in our opinion, is well taken.

The only direct testimony bearing upon the question of any willful or malicious action on the part of Helm in cutting the road as contended by appellees is that of Helm himself, and his testimony does not support appellees' claim for exemplary damages. In the first place Helm's testimony, in our opinion, does not raise a fact issue on the question of whether he knew that the road was being cut on appellees' property at the time he gave instructions to Winters' employees to open the road. Actually the effect of his testimony is that he did not at the time of the cutting of the road, know that appellees owned the property, and there is no evidence to the contrary. Nor does the evidence raise a fact issue on the question of whether Helm in instructing the cutting of the road acted willfully or maliciously so as to make him liable for exemplary damages. The record shows that a woman had called the highway department office about a fence on the south side of appellees' property. Helm testified and there is no evidence to the contrary that a woman called his office concerning the matter and as a result he went to the house on the land in question where he was met by the woman, whom he described. He testified that she told him she wanted to see about getting the fence put back on the south line of the land because she had permission to keep her horses on the place. Helm stated that he told the lady he could not do this because of the work that would be going on in the vicinity for some time. He further stated that he and the lady walked over and inspected the tract; that he told her he needed to open a haul road through the property and showed her what he wanted; that she gave him a number to call which he did, and after identifying himself and his company to the person who answered, asked permission to cut a haul road over the property. He testified that such permission was granted. Helm testified that the telephone number and other detail data concerning the matter was thereafter lost by him in a car wreck. He testified that the haul road in question was needed; that when he cut the road across the land he thought he had verbal permission from the owners because of the telephone conversation. He stated that the reason he had not crossed the land before was because he had not previously been able to receive any kind of permission. Helm further testified that at the time he gave instructions for the cutting of the haul road he did not know Mr. and Mrs. Lawless. Mr. and Mrs. Lawless testfied to the same effect. He further stated that he at no time had any animosity toward them and no desire to injure them in any way, and that in opening the haul road he acted in good faith with the belief that he had permission from the owners.

Appellees contend that Helm on cross examination admitted that he knew at the time of cutting the road that he had no authority from the owners, and that he intended to and did cut the road regardless of his lack of authority. This asserted admission of Helm is the sole basis of appellees' claim that he was guilty of willful and malicious action. In our opinion, however, this is not the effect of Helm's testimony. The effect of his testimony is that at the time of cutting the road he did not have permission or authority from appellees;

that he did not then know that they owned the land; that he thought he had verbal permission from the owners because of the telephone conversation, but that he thereafter acquired the knowledge that appellees were owners of the property, and he then knew that he did not have authority from the owners when the road was cut across their land.

 The effect of Helm's testimony is that when he had the road built across appellees' land he did so in good faith and in the mistaken belief that he had permission from the owners, and was acting within his rights. There was no evidence to the contrary. Exemplary damages are not awarded when the defendant acts in good faith and in the belief that he is exercising his right.

For the reasons stated the judgment awarding appellees $9,750.00 actual damages against appellants is affirmed. The judgment against Helm for exemplary damages is reversed and rendered in Helm's favor.