In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00260-CV**
_____

**CFNA RECEIVABLES (TX) INC. F/K/A CITIFINANCIAL, INC., AND CITIFINANCIAL SERVICING, LLC, Appellants**

**V.**

**CYNTHIA D. HOLLENBERG, Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 16-04-03926-CV**

**MEMORANDUM OPINION**

Appellants CFNA Receivables (TX) Inc. (f/k/a CitiFinancial, Inc.) and CitiFinancial Servicing, LLC (collectively "CitiFinancial") appeal from a judgment entered following a jury verdict in favor of appellee, Cynthia D. Hollenberg. In two issues, appellants contend that (1) the trial court erred in holding that the home equity extension of credit to Hollenberg violated article XVI, section 50(a)(6) of the Texas

Constitution and (2) the home equity extension of credit it sought to foreclose is not void because the original acceleration of the loan was abandoned. We affirm the trial court's judgment.

PROCEDURAL BACKGROUND

On April 1, 2016, Hollenberg filed a lawsuit against CitiFinancial, in which she asserted that she owns a home, and that as security to the lender, CitiFinancial, she executed a note and home equity security instrument conveying a security interest in the property to CitiFinancial. According to the Deed of Trust attached as an exhibit to her petition, the original principal amount was $43,967.54, payable in monthly installments of principal and interest. Hollenberg pleaded that she "last defaulted on the loan due to financial hardship in 2009."

Hollenberg asserted that CitiFinancial "cannot engage in foreclosure because the limitations period to foreclose has passed." Hollenberg pleaded that (1) the note matured on April 7, 2009, when CitiFinancial sent her a notice of default and intent to accelerate, followed by a notice of acceleration, and (2) the statute of limitations began to run on that date. Hollenberg contended that no foreclosure sale of the property had taken place, and "[a]t no time were actions taken by the parties that could be construed as a waiver or abandonment of acceleration of the [n]ote." Hollenberg sought a declaration of the parties' rights, obligations, and interests as to

2

the property, as well as a determination of the validity of the real property lien, and she requested quiet title, "voiding all documents on file" reflecting any interest of CitiFinancial in the property. Hollenberg also requested a permanent injunction to prevent CitiFinancial from interfering with her possession.

CitiFinancial Servicing, LLC ("CitiFinancial Servicing") filed a general denial and removed the case to federal court, but it was subsequently remanded to the 284th District Court of Montgomery County upon Hollenberg's motion. CitiFinancial Servicing filed an amended answer, in which it raised several affirmative defenses. CFNA Receivables (TX) Inc. f/k/a CitiFinancial, Inc. ("CFNA Receivables") filed a general denial and also raised the following as affirmative defenses: (1) Hollenberg's own acts or omissions caused her alleged damages, (2) a third party's acts or omissions caused Hollenberg's alleged damages, (3) Hollenberg's claims "are barred by her own breach of contract[,]" (4) waiver, consent, and agreement, (5) estoppel, (6) failure to mitigate, and (7) Hollenberg failed to state a cause of action for which the court could grant relief. CitiFinancial Servicing and CFNA Receivables later filed amended answers, in which they alleged that Hollenberg's claim is barred by the statute of limitations.

On September 1, 2016, Hollenberg filed a sixty-day notice for CitiFinancial to cure violations under Article XVI, section 50(a)(6) of the Texas Constitution. *See*

Tex. Const. art. XVI, § 50(a)(6)(Q)(x). In said notice, Hollenberg asserted that the home equity loan violated the Texas Constitution in four ways: (1) closing costs exceeded three percent of the principal; (2) the required notice was signed on the same day as the closing; (3) Hollenberg did not receive the final itemized disclosure of the actual fees, points, interest, costs, and charges that would be charged at closing at least one day before closing, but instead received "the final itemized HUD-1 Settlement Statement" on the day of closing; and (4) Hollenberg never received a copy of the final loan application.

In January 2017, Hollenberg filed an amended petition, in which she added claims for violations of the Texas Constitution and breach of contract stemming from those alleged constitutional violations. Hollenberg claimed that because CitiFinancial failed to cure the constitutional violations, it had forfeited all principal and interest on her loan, and she sought a declaratory judgment declaring the note void due to the alleged constitutional violations. Hollenberg filed a motion for traditional summary judgment, in which she contended that she was entitled to summary judgment because she had proven both her limitations claim and her constitutional violation claim. CitiFinancial filed a traditional motion for summary judgment, in which it asserted that Hollenberg should take nothing and that CitiFinancial is entitled to judicial foreclosure. In its motion for summary judgment,

4

CitiFinancial contended that Hollenberg was not entitled to prevail on her limitations claim against CitiFinancial, but it did not assert its affirmative defense that limitations barred Hollenberg's claim. The trial court denied both parties' motions, and the case proceeded to a jury trial.

THE TRIAL

Hollenberg testified that she and her husband took out the subject loan with CitiFinancial on June 21, 2004, on property she had continuously owned as her homestead since 1995. According to Hollenberg, she signed the deed of trust and note at the closing of the loan. Hollenberg testified that she received a document entitled "Housing and Urban Development Settlement Statement" on the date of the closing, and the document was admitted into evidence as an exhibit. Hollenberg agreed that the document summarizes the charges related to her loan. In addition, Hollenberg agreed that the first time she saw the actual charges for her loan was on the day of closing. According to Hollenberg, "everything we got was on the same day." When asked whether she ever received the final loan application, Hollenberg testified, "I didn't know there was such a thing."

Hollenberg's husband died eight months after the loan closed, and he had been the family's sole source of income. Hollenberg testified that she defaulted on the loan, and she received a letter from a law firm stating that she was in default,

5

demanding a payment of $8400, and informing her that CitiFinancial could accelerate the loan. On May 8, 2007, Hollenberg received notice that the loan had been accelerated. In February 2009, Hollenberg received another letter stating that her loan had been accelerated. Hollenberg also testified that sometime in 2014, she received a letter informing her that if she paid a certain amount by a certain date, her home would not go into foreclosure. Although foreclosure has "been attempted quite a few times[,]" Hollenberg explained that she still owns the home. According to Hollenberg, CitiFinancial never offered to cure the alleged constitutional violations. Hollenberg rested at the end of her testimony.

Kyle Ramey testified that he is "employed by Citimortgage, Incorporated[,]" which "fall[s] under the same work umbrella[]" as CitiFinancial and CFNA. Ramey explained that he is "assigned files that are in default for research and analyzing the history for testimony." According to Ramey, the Disclosure Statement Note and Security Agreement lay out all the terms of Hollenberg's loan, including the principal balance of $43,967.54 and the first monthly payment, which included any insurance premiums. The disclosure document reflects that Hollenberg signed it on June 21, 2004.

According to Ramey, Hollenberg incurred fees in the amount of $1280.61 for the loan. Ramey testified regarding Hollenberg's repayment history. Ramey

explained that the first notice of acceleration was sent to Hollenberg on May 8, 2007. Ramey testified that CitiFinancial halted the acceleration in July 2009 when it received a payment, and that it is CitiFinancial's practice to waive acceleration when it receives funds showing a borrower's willingness to pay. According to Ramey, Hollenberg never cured the default after receiving the acceleration notice of July 11, 2014, and the foreclosure process is ongoing. CitiFinancial rested at the conclusion of Ramey's testimony.

Question three of the charge asked whether Hollenberg received "a final itemized disclosure of the actual fees, points, interest, costs[,] and charges that will be charged at closing of the Loan at least one day before the closing of the Loan[,]" and the jury answered, "No." In its response to question six, the jury found that CitiFinancial did not offer Hollenberg $1000 and the right to refinance the loan within sixty days of receiving her notice of the constitutional violations. The jury also found in its response to question ten that Hollenberg had not waived her right to dispute the validity of the loan. The trial judge rendered judgment in favor of Hollenberg, in which it declared Hollenberg the owner of the tract and decreed that the security instrument filed by CitiFinancial "is void and of no force or effect now and forever." Additionally, the trial judge ordered that "any and all assignments, substitution of trustee documents, and notices of sale . . . are also void and of no

force or effect now and forever" and awarded damages to Hollenberg in the sum of $46,370.90. Moreover, the trial court permanently enjoined CitiFinancial from directly or indirectly engaging in foreclosure activity or disrupting Hollenberg's quiet and peaceful control, possession, and ownership of the subject property. CitiFinancial filed a motion for new trial and then filed a notice of appeal.

ANALYSIS

In its first issue, CitiFinancial argues that the trial court erred in holding that the home equity extension of credit violated the Texas Constitution because "Hollenberg received a final itemized disclosure of the actual fees, points, interests, costs[,] and charges at least one day before the closing of the loan." According to CitiFinancial, if the extension of credit to Hollenberg failed to comply with the requirements of Article XVI, section 50(a)(6) of the Texas Constitution, it is "still entitled to an equitable lien on the homestead based upon the doctrine of equitable subrogation."

In 1998, the Texas Constitution was amended to allow a homeowner to voluntarily encumber her homestead with a lien in return for an extension of credit, *i.e.*, a home equity loan. *Williams v. Wachovia Mortg. Corp.*, 407 S.W.3d 391, 394 (Tex. App.—Dallas 2013, pet. denied). Article XVI, section 50(a)(6)(M)(ii) of the Texas Constitution provides as follows:

8

> The homestead . . . shall be, and is hereby protected from forced sale, for the payment of all debts except for: . . . (6) an extension of credit that . . . is closed not before . . . one business day after the date that the owner of the homestead receives a copy of the loan application . . . and a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing.

Tex. Const. art. XVI, § 50(a)(6)(M)(ii). "[S]ection 50 of the constitution protects the homestead from foreclosure for the payment of debts subject to eight exceptions, one of which covers only those home-equity loans that contain a litany of exacting terms and conditions set forth in the constitution." *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 477 (Tex. 2016). Article XVI, section 50(a)(6) "describes what a home-equity loan must look like if a lender wants the option to foreclose on a homestead upon borrower default." *Id.* at 478. The only constitutional right created by section 50(a) is freedom from a forced sale to satisfy debts other than the types of debts described in its exceptions. *Id.* "[A] lien securing a constitutionally noncompliant home-equity loan is not valid before the defect is cured." *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 547 (Tex. 2016).

Section 50(a)(6)(M)(ii) protects a homestead from forced sale due to default on a home equity loan unless, at least one business day before closing, the owner of the homestead received a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing. *See* Tex. Const. art. XVI, § 50(a)(6)(M)(ii). We must review the legal and factual sufficiency of the evidence

9

supporting the jury's finding that CitiFinancial failed to provide Hollenberg the requisite notice. Evidence is legally sufficient to support a factfinder's verdict if the evidence would enable a reasonable and fair-minded factfinder to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When reviewing evidence to determine whether it was legally sufficient to support the verdict, we credit evidence that supports the verdict if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *see Am. Interstate Ins. Co. v. Hinson*, 172 S.W.3d 108, 114 (Tex. App.—Beaumont 2005, pet. denied). We will sustain a legal sufficiency challenge "when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla." *Suberu*, 216 S.W.3d at 793. "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Id.* (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).

When reviewing evidence to determine whether it was factually sufficient to support the verdict, we must weigh all the evidence, both for and against the finding. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In reviewing a factual sufficiency challenge for which the appellee had the burden of proof, we "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to

10

be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). As long as the evidence falls within the zone of reasonable disagreement, we cannot subject our judgment for that of the factfinder. *City of Keller*, 168 S.W.3d at 822.

Hollenberg testified that she and her husband took out the loan on her homestead on June 21, 2004. In addition, as discussed above, Hollenberg testified that she received notice of the actual charges for her loan on the day of closing. Documents introduced into evidence, including (1) the Deed of Trust and (2) the Disclosure Statement, Note, and Security Agreement, reflect that the loan documents were executed on June 21, 2004. CitiFinancial points to Hollenberg's signature on the Disclosure Statement, Note, and Security agreement, arguing that "[w]hen Hollenberg signed the Note, she acknowledge[d] receipt of the Note, the Deed of Trust[,] and accompanying information about the amount financed." However, Hollenberg's signature by which she acknowledged receipt of the note, deed of trust, and accompanying information is dated June 21, 2004.

Hollenberg's signature on the document does not contradict her testimony. CitiFinancial did not point this Court to any evidence in the record that Hollenberg received the required notice of the charges no later than one business day before the closing of the loan, and our review of the record revealed none. Crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless

11

reasonable jurors could not, we conclude that the evidence would enable reasonable and fair-minded people to conclude that Hollenberg did not receive the required notice; therefore, the evidence is legally sufficient. *See City of Keller*, 168 S.W.3d at 827. Furthermore, considering and weighing all the evidence, we conclude that the evidence is not so weak nor is the finding so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Francis*, 46 S.W.3d at 242. Therefore, the evidence is factually sufficient.

As part of its argument in issue one, CitiFinancial contends that even if the loan failed to comply with the Texas Constitution, it is "still entitled to an equitable lien on the homestead based upon the doctrine of equitable subrogation." The record reflects that CitiFinancial did not raise the issue of equitable subrogation in the trial court. Equitable subrogation is an affirmative defense that must be properly pleaded and cannot be raised for the first time on appeal. *Wells Fargo Bank, N.A. v. Leath*, 425 S.W.3d 525, 540 (Tex. App.—Dallas 2014, pet. denied). We conclude that CitiFinancial has waived its equitable subrogation argument for purposes of appeal. *See id.*

CitiFinancial also asserts in its argument regarding issue one that Hollenberg's claims are barred by the applicable statute of limitations. As discussed above, CitiFinancial pleaded in an amended answer that Hollenberg's claims were

barred by the statute of limitations. In its motion for summary judgment, CitiFinancial argued against Hollenberg's contention that limitations began to run as to CitiFinancial's claims against her when the note was accelerated in 2009, thereby barring CitiFinancial's foreclosure efforts. However, the record reflects that CitiFinancial never submitted issues to the jury or obtained a ruling in the trial court regarding when Hollenberg's claims against CitiFinancial accrued.[1] "Limitations is an affirmative defense and cannot be raised for the first time on appeal." *Naficy v. Baker*, 642 S.W.2d 282, 284 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *see* Tex. R. App. P. 33.1(a). We conclude that CitiFinancial has waived its limitations argument for purposes of appeal. *See Naficy*, 642 S.W.2d at 284; *see also* Tex. R. App. P. 33.1(a).

Having concluded that the evidence was legally and factually sufficient to support the jury's finding that Hollenberg did not receive a final itemized disclosure of the actual fees, points, interest, costs, and charges that would be charged at closing

---

[1]The charge defined "waiver" as "an intentional surrender of a known right or intentional conduct inconsistent with claiming the right." Question seven of the charge asked whether CitiFinancial waived one or more accelerations of the loan, and the jury answered affirmatively as to three of the four dates included with the question. Question ten of the charge asked the jury whether Hollenberg "waive[d] her right, if any, to make claims against CitiFinancial disputing the validity of the Home Equity Loan[,]" and the jury answered, "No[.]" CitiFinancial does not specifically challenge the jury's answer to questions seven or ten in its appellate brief.

at least one business day before the loan closed, we likewise conclude that the trial court did not err by finding that the home equity loan violated article XVI, section 50(a)(6) of the Texas Constitution. We therefore overrule issue one.

Furthermore, because we have concluded that the trial court did not err by finding that the loan to Hollenberg violated the Texas Constitution, we need not address issue two, in which CitiFinancial argues that because it abandoned previous acceleration attempts, the four-year statute of limitations "did not begin to run again until the latest acceleration effort [] on September 23, 2014." Because of the constitutional violation, Hollenberg's home is protected from forced sale by CitiFinancial. *See* Tex. Const. art. XVI, § 50(a)(6); *Wood*, 505 S.W.3d at 547; *Garofolo*, 497 S.W.3d at 477-78. For all these reasons, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on April 17, 2019
Opinion Delivered July 11, 2019

Before McKeithen, C.J., Kreger and Horton, JJ.

14